# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

REGINALD GRIFFIN,                                    Case No. 1:13-cv-861
       Petitioner,

                               Barrett, J.
     vs                                        Bowman, M.J.

WARDEN, ALLEN                                        **REPORT AND**
CORRECTIONAL INSTITUTION,                            **RECOMMENDATION**
       Respondent.

Petitioner, an inmate in state custody at the Allen Correctional Institution (ACI) in Lima, Ohio, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. 1).  This matter is before the Court on respondent's motion filed March 28, 2014 to dismiss the petition on the ground that it is time-barred under 28 U.S.C. § 2244(d).  (Doc. 7).  Petitioner has filed a brief opposing respondent's motion to dismiss.  (Doc. 10).  Respondent has filed a brief in reply to petitioner's opposition memorandum, to which petitioner has filed a sur-reply.  (Docs. 13, 14).[1]

## I.  PROCEDURAL HISTORY

### State Trial Proceedings

In February 2009, the Hamilton County, Ohio, grand jury returned an indictment charging petitioner with one count of murder in violation of Ohio Rev. Code § 2903.02(B); six counts of felonious assault in violation of Ohio Rev. Code § 2903.11(A); and two counts of having weapons while under disability in violation of Ohio Rev. Code § 2923.13(A)(3).  (Doc. 7, Ex. 1).  Firearm specifications were attached to the murder and felonious assault charges.  (*Id.*).  The indictment

---

[1] In a separate Order issued this date, the undersigned has granted petitioner's non-dispositive motions for leave to file his habeas petition and for leave to file a sur-reply to respondent's reply brief.  (*See* Docs. 2, 14).

stemmed from a shooting incident that occurred on August 27, 2008, which resulted in the death

of one victim, Shedrick Brookins, and injury to two other victims, Wayne Thornton and Felton

Mitchell.  The Ohio Court of Appeals, First Appellate District, has provided the following

summary of the facts that led to the indictment based on evidence presented at petitioner's trial:[2]

> At trial, the state presented evidence about multiple shootings outside a bar on
> August 27, 2008.  Police Officer Mary Braun responded to the scene and
> discovered that three men, later identified as Shedrick Brookins, Wayne Thornton,
> and Felton Mitchell, had been shot.  Thornton and Mitchell were transported to the
> hospital.  Brookins died at the scene.
>
> Lashasta Porter testified that on August 27 she was sitting outside her house,
> which was near the bar.  Porter stated that she had seen Brookins, who was her
> cousin, Griffin, and two other men leaving the bar.  Porter called Griffin by the
> nickname "Mudd" and had known him for years.  According to Porter, there was a
> conversation among the men that sounded unfriendly.  Porter stated that she had
> seen Griffin reach into his coat and then had heard a gunshot.  Porter testified that
> Brookins had run toward her house.  Another man appeared and shot Brookins
> four or five more times.
>
> Porter's daughter, Latoniqua Kelley, testified that she also knew Griffin from the
> neighborhood.  Kelley had been sitting with her mother on August 27.  She
> testified that she had seen Griffin shoot Brookins in the leg and that she had heard
> other gunshots after she had run into her house.  Both Porter and Kelley identified
> Griffin in a photograph array.  Thornton, who was one of the victims, also
> identified Griffin in a photograph array, but at the time of the identification he did
> not state that Griffin was the shooter.  At the hearing on Griffin's motion to
> suppress, Thornton testified that Griffin had shot him in the leg.
>
> Corey Black testified that he had been standing across the street from the bar when
> he heard a commotion outside the bar.  He testified that he had seen Griffin,

---

[2] The state appellate court summarized the facts in its direct appeal decision filed February 11, 2011.  (*See*
Doc. 7, Ex. 13).  28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of
habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue
made by a State court shall be presumed correct" unless the petitioner rebuts the presumption by "clear and
convincing evidence."  In the absence of clear and convincing evidence to rebut the Ohio Court of Appeals' factual
findings quoted herein, those findings are presumed to be correct.  *See McAdoo v. Elo,* 365 F.3d 487, 493-94 (6th Cir.
2004).

Brookins, and Thornton in front of the bar.  Black stated that he had seen Griffin grab something from his waistband and then had heard gunshots.  Later that night, Black identified Griffin as the shooter.  In the presence of Police Officer Timothy Watson, Sergeant Bill Halusek showed Black a photograph of Griffin at the scene to confirm that he was the person to whom Black was referring.  Deonte Nuckols testified that, while he could not say that he had seen Griffin shoot anyone, he had seen him with a gun in front of the bar that night.  Nuckols had known Griffin for years and was shown a single photograph of Griffin to confirm that he was the person to whom Nuckols was referring.

William Holmes testified that he had seen Griffin in front of the bar on August 27 and that he had seen Griffin fire a gun.  Holmes later identified Griffin in a photograph array as the person whom he had seen firing a gun outside the bar.  Geneo Bronson testified that he had been in a car in front of the bar when he saw Griffin shoot Brookins.  Bronson had known Griffin for years, and when Detective Gregory Gehring showed him a single photograph of Griffin, Bronson confirmed his identity.  Another witness, William Ewing, who worked at the bar, testified that he had seen a man named Mudd at the bar on the night of the incident.  At trial, Ewing identified Griffin as Mudd.

Kiara Taylor testified that on August 28 she had received a text message from someone who identified himself as Mudd.  In the message, the person stated that he had killed a man in front of Martin's Bar on August 27.  Quincy Jones testified that when he was in the Hamilton County Justice Center, he had heard Griffin confess to having shot Brookins.

John Heile from the Hamilton County Coroner's Office testified about bullet fragments and cartridges that had been recovered from Brookins and from the scene.  According to Heile, the fragments indicated that at least two guns had been shot.

(*Id.*, Ex. 13, pp. 1-3).

Prior to trial, petitioner's counsel filed a motion to suppress the eyewitness identifications of petitioner, which was overruled by the trial court.  (*See id.*, Exs. 2-5).  Petitioner waived his right to a jury trial, and the matter proceeded to trial by the court.  (*Id.*, Ex. 6).  At the close of the bench trial, the court acquitted petitioner on the murder charge (Count 1) and the felonious assault charges involving victims Thornton and Mitchell (Counts 4-7).  (*Id.*, Ex. 7).  However, the court

3

found petitioner guilty as charged with respect to the felonious assault offenses, with

specifications, involving victim Brookins (Counts 2-3) and the two weapons offenses charged in

Counts 8 and 9.  (*Id.*, Ex. 8).

After a sentencing hearing, the trial court issued a final judgment entry on January 15,

2010, sentencing petitioner to an aggregate prison term of sixteen (16) years.  (*Id.*, Ex. 9).

Specifically, the court merged the two felonious assault offenses and the two weapons offenses

for sentencing purposes and sentenced petitioner to the following consecutive terms of

imprisonment:  eight (8) years for the felonious assault offense charged in Count 2; three (3) years

for the firearm specification attached to Count 2; and five (5) years for the weapons offense

charged in Count 8.  (*Id.*).

## State Appeal Proceedings

With the assistance of new counsel for appeal purposes, petitioner timely appealed to the

Ohio Court of Appeals, First Appellate District.  (*See* Doc. 7, Ex. 10).  In his appellate brief,

petitioner presented three assignments of error:

1.   The trial court committed prejudicial error when it overruled Defendant's motion
     to suppress in-court identification.

2.   Defendant was prejudiced by ineffective assistance of his trial counsel who failed
     to motion the court for acquittal pursuant to Ohio Crim. R. 29 even though the
     State's evidence was insufficient for a reasonable jury to convict him.

3.   Defendant's conviction was against the manifest weight of the evidence.

(*Id.*, Ex. 11).  On February 11, 2011, the Ohio Court of Appeals overruled the assignments

of error and affirmed the trial court's judgment.  (*Id.*, Ex. 13).

Petitioner's appellate counsel next pursued a timely appeal on petitioner's behalf to the

Ohio Supreme Court.  (*See id.*, Ex. 14).  In his memorandum in support of jurisdiction, petitioner

asserted the same three claims that had been presented as assignments of error to the Ohio Court

of Appeals.  (*Id.*, Ex. 15).  On May 25, 2011, the Ohio Supreme Court issued an entry denying

petitioner leave to appeal.  (*Id.*, Ex. 17).

<strong>Federal Habeas Corpus Petition</strong>

The instant federal habeas action commenced on November 21, 2013 with the filing of the

petition and an accompanying motion dated October 3, 2013 requesting leave of court to file the

petition.  (*See* Docs. 1-2).  In the petition, petitioner alleges as grounds for relief the same three

claims that he raised on appeal in the state courts.  (Doc. 1, pp. 5, 6, 8; *see also* Doc. 7, Exs. 11,

15).

Petitioner states in the petition that he signed and placed it in the prison mailing system

over a year earlier, on August 23, 2012.  (*Id.*, p. 13).  Petitioner has averred in his October 3, 2013

motion for leave to file the petition, which has been granted by separate order issued this date,

that he placed the pleading in the "internal mailing system" of Lebanon Correctional Institution

(LeCI) on August 23, 2012 along with "the proper paperwork for prison officials to access the

necessary funds from his account" to pay the $5.00 filing fee.  (Doc. 2, p. 2).  However, "[s]everal

weeks later, when returning to his cell, he discovered the petition and the unprocessed paperwork

to access his account simply lying on his bunk" without any explanation given "as to why it had

not been properly processed."  (*Id.*).  When petitioner made inquiries into the matter, he learned

that the papers were returned because he did not have sufficient funds in his account to cover the

cost of mailing and filing of the petition.  (*Id.*).  Petitioner claimed that despite the over one-year

passage of time, he could not file his petition any earlier because he was placed in segregation

5

from September 14, 2012 through July 24, 2013 and was unable during that entire time to access his legal papers.  (*See id.*, pp. 2-4)  Petitioner states that he received "his property and legal papers shortly" after his arrival on July 24, 2013 in the "protective control unit" at ACI.  (*See id.*, Doc. 10, p. 1; Doc. 14, p. 1; *see also* Doc. 2, p. 1).

In the motion to dismiss filed in response to the petition, respondent contends that the petition is subject to dismissal with prejudice because it is barred from review by the applicable one-year statute of limitations governing federal habeas petitions, which is set forth in 28 U.S.C. § 2244(d).  (*See* Doc. 7).  Petitioner opposes the motion to dismiss.  (Doc. 10).  Respondent has filed a brief in reply to petitioner's opposition memorandum, and petitioner has responded to respondent's reply brief by filing a sur-reply brief.  (Docs. 13-14).

## II.  RESPONDENT'S MOTION TO DISMISS (DOC. 7) SHOULD BE GRANTED BECAUSE THE PETITION IS TIME-BARRED

In this case, it is presumed that the instant habeas petition was filed on October 3, 2013, which is the earliest date that petitioner could have placed the petition and accompanying motion for leave to file the petition in the prison mailing system for submission to this Court.  (*See* Doc. 2, p. 7).[3]

Under 28 U.S.C. § 2244(d)(1), as amended by § 101 of the Antiterrorism and Effective

---

[3] The filing date of a federal habeas corpus petition submitted by a *pro se* prisoner is the date on which the prisoner provides his papers to prison authorities for mailing.  *See Houston v. Lack,* 487 U.S. 266 (1988); *see also Miller v. Collins,* 305 F.3d 491, 497-98 (6th Cir. 2002); *Goins v. Saunders,* 206 F. App'x 497, 499 n.1 (6th Cir. 2006).  As discussed above, although petitioner claims that he initially attempted to file his habeas petition in August 2012, he has conceded that the alleged attempt was unsuccessful because the pleading and accompanying paperwork were returned to him by prison staff for insufficient funds.  Petitioner has stated in his motion for leave to file the petition, which was ultimately filed on November 21, 2013 upon payment by petitioner of the filing fee, that he placed the pleading in the prison's "internal mailing system" on October 3, 2013.  (Doc. 2, p. 7).  Although the October 3, 2013 date is suspect given that the petition and accompanying motion were not actually received and filed by the Court until over a month and a half  later, the undersigned will nevertheless assume in petitioner's favor that petitioner provided his papers to prison authorities for mailing as he has averred in his motion for leave to file the petition.

Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, a person in custody

pursuant to the judgment of a state court must file an application for a writ of habeas corpus

within one year from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Under 28 U.S.C. § 2244(d)(2), the limitations period is tolled during the

pendency of a properly filed application for state post-conviction relief or other collateral review.

The Court must first determine which limitations provision contained in 28 U.S.C. §

2244(d)(1) applies to petitioner's three grounds for relief. It is clear from the record that §

2244(d)(1)(C) and § 2244(d)(1) (D) are inapplicable because (1) petitioner's claims are based on

known errors that allegedly occurred during the trial, which were raised by petitioner on appeal to

the state courts *before* his conviction became final; and (2) petitioner has not asserted a

constitutional right that has been newly recognized by the United States Supreme Court and made

retroactively applicable to cases on collateral review. It further appears that the limitations

provision set forth in § 2244(d)(1)(B) does not apply to petitioner's claims. Although petitioner

has suggested that state prison officials effectively prevented him from filing a habeas petition

within one year after his conviction became final by failing to properly process the petition and

accompanying paperwork that he submitted on August 23, 2012 to the prison mailroom, petitioner was not prevented by any state action from filing a petition before that date, which was the last day that he could file a timely petition under § 2244(d)(1)(A). Moreover, contrary to petitioner's contention, no state action precluded petitioner from filing a petition on the deadline date of August 23, 2012. As discussed below, it appears from evidence presented by respondent that (1) petitioner did not submit any pleadings to the prison mailroom on August 23, 2012 that were returned to him by prison staff for insufficient funds; and (2) in any event, the alleged return of the pleadings cannot be attributed to any improper action by the state, but rather to petitioner's own actions in depleting his prison account to the point that he was unable to pay the filing fee on the deadline date. Therefore, as respondent has contended and petitioner apparently concedes (*see* Doc. 2, pp. 1-2; Doc. 7, pp. 7, 8-9), petitioner's claims are governed by the one-year statute of limitations set forth in § 2244(d)(1)(A), which began to run at the conclusion of direct review or expiration of time for seeking such review.

As both parties have indicated (*see* Doc. 2, p. 1; Doc. 7, p. 8), petitioner's conviction became final for statute of limitations purposes on August 23, 2011, when the 90-day period expired for filing a petition for writ of certiorari to the United States Supreme Court from the Ohio Supreme Court's May 25, 2011 final entry affirming the Ohio Court of Appeals' direct appeal decision. *See Lawrence v. Florida,* 549 U.S. 327, 333-34 (2007) (citing *Clay v. United States*, 537 U.S. 522, 527-28 (2003), as support for the conclusion that in contrast to the tolling provision set forth in 28 U.S.C. § 2244(d)(2), "direct review" for purposes of determining finality under § 22444(d)(1)(A) includes the time for seeking review in the United States Supreme Court). The statute commenced running on August 24, 2011, one day after petitioner's conviction became

8

final, *see* Fed. R. Civ. P. 6(a); *Bronaugh v. Ohio,* 235 F.3d 280, 285 (6th Cir. 2000), and expired 365 days later on August 23, 2012 absent application of statutory or equitable tolling principles.[4]

During the one-year limitations period that began on August 24, 2011, petitioner was entitled to tolling of the statute under 28 U.S.C. § 2244(d)(2) based on any pending "properly filed" applications for state post-conviction relief or other collateral review. *See* 28 U.S.C. § 2244(d)(2); *see also Holland v. Florida,* 560 U.S. 631, 635 (2010); *Allen v. Siebert,* 552 U.S. 3, 4 (2007) (per curiam); *Vroman v. Brigano,* 346 F.3d 598, 602 (6th Cir. 2003). In this case, petitioner did not take any action during the one-year limitations period to challenge his conviction or sentence in the state courts. Therefore, the statutory tolling provision does not apply to extend the limitations period past the August 23, 2012 deadline date.

The AEDPA's statute of limitations is also subject to equitable tolling, *see Holland*, 560 U.S. at 645, "when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond the litigant's control." *Hall v. Warden, Lebanon Corr. Inst.,* 662 F.3d 745, 749 (6th Cir. 2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)), *cert. denied*, 133 S.Ct. 187 (2012). Equitable tolling is granted "sparingly." *Id.* (quoting *Robertson*, 624 F.3d at 784). A habeas petitioner is entitled to equitable tolling only if he establishes that (1) "he has been pursuing his rights diligently;" and (2) "some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (quoting *Holland*, 560 U.S. at 649 (internal quotations omitted)); *see also Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005). Although the Sixth Circuit previously utilized a five-factor approach in determining whether a habeas petitioner is entitled to

---

[4] Respondent has noted in the motion to dismiss that 2012 was a "leap year." (Doc. 7, p. 9 n.1).

equitable tolling, *Holland*'s two-part test has replaced the five-factor inquiry as the "governing framework" to apply. *Hall*, 662 F.3d at 750 (citing *Robinson v. Easterling,* 424 F. App'x 439, 442 n.1 (6th Cir. 2011)). "With *Holland* now on the books, the 'extraordinary circumstances' test, which requires both reasonable diligence and an extraordinary circumstance, has become the law of this circuit." *Id.*; *see also Patterson v. Lafler,* 455 F. App'x 606, 609 n.1 (6th Cir. 2012).

In this case, petitioner contends that his petition should be deemed timely filed because his prior unsuccessful attempt to deliver his habeas petition to the Court through the prison mail system on the date that the statute of limitations was due to expire entitles him to the benefit of the federal mailbox rule, *see supra* p. 6 n.3, and/or equitable tolling of the limitations period. (*See* Docs. 2, 10; *see also* Doc. 14, p. 2). Petitioner initially argued that August 23, 2012 should be considered the filing date for his petition, because the pleading should have been mailed to the Court at that time, but instead was improperly returned to him by prison staff who, in violation of prison regulations and without his knowledge, had depleted the funds necessary to cover the costs for the processing and filing of the petition. (*See* Docs. 2, 10). He now contends, however, that prison officials erred in failing to process his timely submitted petition because (1) they should have known that funds posted as deposited in his prison account after the August 23, 2012 deadline date, in September 2012, were "obviously forthcoming;" or (2) they should have forwarded the petition to the Court "free of charge" in accordance with Ohio Department of Rehabilitation and Correction (ODRC) Policy No. 59-LEG-01 due to petitioner's indigent status. (Doc. 14, pp. 3-4). Petitioner further argues as justification for equitable tolling of the limitations period that he could not file his habeas petition until over a year after his initial unsuccessful attempt because he was denied access to his legal papers during the time he was housed in

10

segregation at LeCI and, thereafter, at Warren Correctional Institution (WCI) from September 14, 2012 through July 24, 2013.  (*See* Docs. 2, 10).

Although it does not appear that the Supreme Court or Sixth Circuit have addressed the issue, the Fifth Circuit has held in a case where prison mailroom officials improperly returned a timely submitted habeas petition to the prisoner "for failure to comply with a nonexistent prison mail regulation" that the petitioner "should have been afforded the benefit of the mailbox rule" and that the petition, which was ultimately filed by a third party on petitioner's behalf over four months after the statute of limitations had expired, "should have been considered timely filed." *See Medley v. Thaler*, 660 F.3d 833, 834 (5th Cir. 2011) (per curiam).  In addition, circuit courts have held that a *pro se* habeas petitioner, who diligently sought to obtain but was denied access to his legal papers while housed in segregation, is entitled to equitable tolling of the one-year statute of limitations during that period of time.  *See, e.g., United States v. Gabaldon,* 522 F.3d 1121, 1124-27 (10th Cir. 2008) (citing *Valverde v. Stinson*, 224 F.3d 129, 133-36 (2nd Cir. 2000), and *Espinoza-Matthews v. California*, 432 F.3d 1021, 1027-28 (9th Cir. 2005)).  However, neither *Medley* nor the line of cases allowing for equitable tolling of the limitations period when the petitioner is denied access to his legal papers while confined in segregation are apposite to the case-at-hand.

First, this case is distinguishable from *Medley* because petitioner has presented no evidence other than the August 23, 2012 date set forth in his habeas petition to support his claim that he submitted the petition and accompanying fee-payment paperwork at that time to the prison mailroom for processing, but that the documents were eventually improperly returned to him by prison staff due to insufficient funds in petitioner's prison account.  In contrast, respondent has

11

presented evidence, which refutes petitioner's self-serving, unsupported allegations. Specifically,

Ron Watts, the "account clerk supervisor" at LeCI, where petitioner was incarcerated between

2010 and January 2, 2013, has submitted an affidavit in which he states in pertinent part:

> The usual procedure for an inmate to mail an item or to pay a court filing fee is as
> follows. The inmate fills out a cash withdrawal slip and takes it to the LeCI mail
> room for processing. The mail room then sends the cash withdrawal slip to the
> LeCI business office to deduct the amount of the mailing or the filing fee from the
> inmate's account. Usually the slip is sent from the mail room to the business
> office within a day. If there are insufficient funds in the inmate's account to mail
> the item or to pay the filing fee, the item is then returned to the inmate along with
> the cash withdrawal slip, which is marked to indicate insufficient funds. Such a
> return usually is accomplished within two days. This type of insufficient funds
> transaction is not reflected in inmate account statements. . . . *The LeCI business
> office, however, does maintain copies of all cash withdrawal slips returned to
> inmates for insufficient funds. These are records kept in the ordinary course of
> business. I have reviewed the LeCI business office records and determined that
> they contain no copies of any cash withdrawal slips returned to Inmate Reginald
> Griffin for insufficient funds for the period from August 20, 2012, through
> September 12, 2012.*

(Doc. 13, Ex. 1, ¶ 10) (emphasis added).

Furthermore, even assuming that petitioner had submitted his petition to the prison

mailroom on August 23, 2012 as he has averred, he was entitled to the benefit of the federal

mailbox rule under *Medley* only if prison officials had wrongfully returned his timely

submissions. Here, in contrast to *Medley*, no showing has been made that prison staff engaged in

any impropriety in returning petitioner's pleadings to him because of insufficient funds in his

prison account to cover the cost of mailing and filing of the petition. To the extent that petitioner

has alleged that prison staff improperly depleted his prison account to pay court costs, respondent

has presented evidence showing that prison staff did not violate any prison regulations or policy

when removing monies from petitioner's prison account to pay court costs and, in fact, played no

role in depleting petitioner's account to the point that petitioner could not pay the $5.00 filing fee in August 2012.  Watts has averred that petitioner's prison account statement for the period between August 1 and October 2, 2012 reveals that prison staff complied with prison policy by removing only monies in excess of the required $15.00 minimum balance from petitioner's account to pay court costs.  (*See id.*, ¶ 5 & "Att. A").  Upon review of petitioner's prison account statement, it further appears that petitioner did have sufficient funds to pay the filing fee on August 3, 2012, and would have had even more funds in his account to cover the fee if he had not made an "ACO PHOTOS SALES" purchase on August 2, 2012.  (*See id.*, "Att. A").  Although the statement reflects that petitioner did not have enough money in his account on August 23, 2012 to pay the $5.00 filing fee, the deficiency was not due to the removal of any funds by prison officials but rather to a $7.00 purchase that petitioner made on August 8, 2012 for "7th Step Chicken."  (*See id.*).  Indeed, no monies were removed by prison staff to pay court costs during the month of August because petitioner's account balance fell below the minimum balance of $15.00.  Only after two deposits totaling $57.00 were made by third parties into the account on September 4-5, 2012, and petitioner's $9.00 state paycheck was deposited into the account on September 7, 2012, were monies removed by prison officials which left petitioner with a minimum balance of $15.00 in his account.  (*Id.*).

Petitioner nevertheless contends in his sur-reply brief that prison officials still acted improperly in returning his timely submissions to him despite the lack of funds in his prison account resulting from personal purchases he had made earlier in the month of August 2012.  (*See* Doc. 14, pp. 3-4).  However, contrary to petitioner's contention, prison staff did not engage in any impropriety by failing to process petitioner's pleadings on the basis of "forthcoming" deposits

13

that had not been made and would not be made until two weeks after the August 23, 2012 deadline date had passed.

Moreover, petitioner has not shown that prison staff violated ODRC Policy No. 59-LEG-01 in returning his federal habeas petition and accompanying fee-payment paperwork to him rather than forwarding the petition to the Court for filing. The prison policy provides in pertinent part that "indigent" inmates are "entitled to free first class mail to courts of law." ODRC Policy No. 59-LEG-01(VI)(D)(2). An inmate is considered "indigent" under this policy "if, during the 30 days immediately preceding the request, the inmate has earned or received less than $12.00 *and, if the inmate's account balance has not exceeded $12.00 at any time during the thirty (30) days immediately preceding the request*." ODRC Policy No. 59-LEG-01(IV) (emphasis added). The undersigned is unable to determine from the account statement provided by respondent, which only covers the period of time from August 1 to October 2, 2012, whether petitioner qualified as an "indigent" inmate whose account balance did not exceed $12.00 at any time during the thirty days immediately prior to August 23, 2012, when he allegedly made his request to access his account. In any event, even assuming that petitioner did qualify under the policy as an indigent inmate "entitled to free first class mail to courts of law," petitioner has not demonstrated that the policy was violated in this case. Here, it appears clear from the record that the paperwork petitioner allegedly submitted to the prison mailroom on August 23, 2012 would have been returned to him because he did not have sufficient cash in his account to cover not only the mailing cost, but also the $5.00 filing fee. In contrast, respondent has submitted evidence showing that it was the prison's policy to return the type of paperwork that petitioner allegedly provided, involving a request for withdrawal of funds from his prison account to process the

petition, when there is insufficient funds in the account to pay the mailing and fee costs.  (*See*

Doc. 13, Ex. 1, ¶ 10).

The undersigned, therefore, concludes that petitioner was not impeded by any state action

from filing a timely habeas petition with this Court before the expiration of the one-year statute of

limitations on August 23, 2012 and that his alleged inability to do so on the deadline date was

attributable solely to his own actions in depleting his account.  Given the purchases that petitioner

made in August 2012, it begs credulity that he was unaware at that time of his account balance or

the likelihood of insufficient funds in his account that month to cover the $5.00 filing fee even if,

as he has contended in his sur-reply brief, he did expect additional funds would be deposited in

his account by August 23, 2012.  Petitioner has acknowledged that August 23, 2012 was the

deadline date for filing a timely federal habeas petition based on the claims of error that he had

raised in the state direct appeal proceedings.  Therefore, if he did deliver his habeas petition to the

prison mailroom on the deadline date as he has claimed, he should have acted to ensure that the

petition would be sent to the Court rather than returned to him for insufficient funds by submitting

an *in forma pauperis* application for completion and processing by the prison cashier along with

the paperwork he allegedly provided at that time requesting that funds be withdrawn from his

account to pay for the mailing and filing of the petition.

Second, petitioner has not demonstrated that he is entitled to equitable tolling of the statute

of limitations because he was denied access to his legal papers during the over ten-month period,

from September 14, 2012 through July 24, 2013, that he was confined in segregation at LeCI and

WCI.  In the cases where equitable tolling was allowed, the denial of access occurred prior to the

expiration of the one-year limitations period.  *See, e.g., Gabaldon*, 522 F.3d at 1126 (involving

15

"complete confiscation of . . . legal materials just weeks before [the] filing deadline"); *Espinoza-Matthews*, 432 F.3d at 1027-28 (involving the denial of access to petitioner's "legal property" for the 11-month period that the petitioner was confined in administrative segregation, which left him only "slightly over a month" in which to prepare and file a timely habeas petition); *Valverde*, 224 F.3d at 134-35 (involving the petitioner's "sworn affirmation" that a correctional officer's confiscation of his legal papers "prevented him from filing his federal writ of habeas corpus within the one year . . . limitation" period). Here, in contrast, petitioner was placed in segregation *after* the statute of limitations had run its course. At that point in time, no statute of limitations was in effect to equitably toll. *Cf. Solis v. Hill*, Civil No. 10-925-PA, 2011 WL 2222060, at *2 (D. Or. June 7, 2011) (emphasis in original) ("Because petitioner was not placed in the Segregation Unit until *after* AEDPA's statute of limitations had already run, he cannot show that such placement made it impossible for him to timely file his case.").

In any event, even assuming (despite evidence to the contrary) that petitioner unsuccessfully attempted to file a timely petition on August 23, 2012, and that his alleged lack of access to his legal papers while confined in segregation from September 14, 2012 to July 24, 2013 qualifies as an "extraordinary circumstance" that could serve to justify his belated filing of the petition over thirteen months later in October 2013, petitioner has not demonstrated that he pursued his claims with the diligence required for equitable tolling of the statute of limitations. *See United States v. Buckaloo*, 257 F. App'x 88, 90 (10th Cir. 2007) (quoting *Green v. Kansas*, 190 F. App'x 682, 685 (10th Cir. 2006)) ("[A]lthough 'confinement in administrative segregation may qualify as an extraordinary circumstance beyond [a prisoner's] control, . . . equitable tolling is justified only where the prisoner has shown that despite his segregated confinement he

16

diligently pursued his habeas claims.'"); *see also Valverde,* 224 F.3d at 134 ("If the person

seeking equitable tolling has not exercised reasonable diligence in attempting to file after the

extraordinary circumstances began, the link of causation between the extraordinary circumstances

and the failure to file is broken, and the extraordinary circumstances therefore did not prevent

timely filing."); *Johnson v. Yates*, 443 F. App'x 247, 249 (9th Cir. 2011) (holding that the

petitioner was not entitled to equitable tolling of the limitations period during the time he was in

administrative segregation in the absence of a showing of the "steps he took before, during or

after his segregation to pursue his federal habeas rights").

It appears from the record that any submissions that petitioner made on August 23, 2012

were returned to him prior to his placement in segregation.  Ron Watts has averred that

documents submitted by prisoners at LeCI to the prison mailroom for processing are usually

returned to prisoners due to insufficient funds to pay court costs "within two days."  (*See* Doc. 13,

Ex. 1, ¶ 10).   Moreover, petitioner himself has averred that the documents he purportedly

submitted to the mailroom on August 23, 2012 were returned to him (placed on his bunk) when

he was not in his prison cell.  (*See* Doc. 2, p. 2).  Petitioner has not alleged that he sought to

resubmit his habeas petition with an application for pauper status prior to his placement in

segregation.  Moreover, although three deposits of monies were made into petitioner's account on

September 4, 5 and 7, 2012, which would have covered both the $5.00 filing fee and postage cost,

petitioner took no action at that time to place the habeas petition in the prison mail system for

processing and mailing to this Court and instead depleted his $15.00 minimum balance by

spending money on September 7 and 11, 2012 for copy charges and pizza.  (*See id.*, "Att. A").

Furthermore, petitioner has not adequately explained why it took him over two months to

file the instant action after he obtained access to his legal documents in July 2013.  Petitioner has

indicated in his memorandum in opposition to respondent's motion to dismiss that soon after his

placement in the protective control unit at ACI on July 24, 2013, he had only limited access for

approximately 40 minutes each day to the prison "law library and legal materials."  (*See* Doc. 10,

pp. 2-3).  Such limitation was neither "extraordinary" nor rendered it impossible for petitioner to

file his petition in a timelier manner, particularly given that he merely had to file a previously

prepared habeas petition based on claims that had already been researched and argued on direct

appeal in the state courts.  *Cf. Ramirez v. Yates*, 571 F.3d 993, 998 (9th Cir. 2009) (holding that

the petitioner was not entitled to equitable tolling of the limitations period while he was in

administrative segregation with limited access to the prison law library and copy machine because

"unlike the denial altogether of access to his personal legal papers," the petitioner's "limited

access" to the prison law library and copier was "neither 'extraordinary' nor made it 'impossible'

for him to file his petition in a timely manner").  Petitioner contends that he needed the extra time

to prepare his motion for leave to file the habeas petition at that late juncture.  (*See* Doc. 10, pp. 2-

3).  However, the statute of limitations is not a jurisdictional bar prohibiting the filing of a habeas

petition, but rather is a matter to be raised after the action has commenced either as a defense by

the respondent or *sua sponte* by the Court as long as the parties are provided with an opportunity

to present their positions on the issue.  *See Day v. McDonough*, 547 U.S. 198, 205, 209-10 (2006)

(emphasis in original) (pointing out that a "statute of limitations defense . . . is not

'jurisdictional'" and holding that although courts are thus "under no *obligation* to raise the time

bar sua sponte," they may do so on their own initiative but must "accord the parties fair notice and

an opportunity to present their positions").

Finally, and perhaps most importantly, in contrast to the line of cases allowing for the possibility of equitable tolling of the limitations period, petitioner has presented no evidence whatsoever to show that he sought to obtain access to his legal materials for the purpose of filing a habeas petition during the over ten-month period of time he was confined in segregation from September 14, 2012 to July 24, 2013. *Cf. United States v. Martinez*, 303 F. App'x 590, 595-96 (10th Cir. 2008) (distinguishing *Gabaldon* and *Espinoza-Matthews*, where the petitioners had demonstrated due diligence by making repeated requests for the return of their legal documents while in segregation, in holding that the petitioner was not entitled to equitable tolling because he had "made no showing . . . that he requested any withheld materials from prison officials").

Accordingly, in sum, the undersigned concludes that the instant federal habeas corpus petition is barred from review by the one-year statute of limitations governing habeas corpus actions brought pursuant to 28 U.S.C. § 2254.  Under the applicable provision set forth in 28 U.S.C. § 2244(d)(1)(A), the statute of limitations commenced running on August 24, 2011, one day after the 90-day period expired for filing a petition for writ of certiorari to the United States Supreme Court from the Ohio Supreme Court's final entry on May 25, 2011 affirming the Ohio Court of Appeals' direct appeal decision, and expired on August 23, 2012.  Petitioner has not demonstrated that he was prevented by state action from timely submitting his petition to the Court for filing on the August 23, 2012 deadline date.  Moreover, neither statutory nor equitable tolling principles apply to further extend the limitations period or otherwise avoid the statute of limitations bar to review in this case.  Therefore, respondent's motion to dismiss (Doc. 7) should be **GRANTED** on the ground that the instant habeas corpus petition, filed at the earliest on October 3, 2013, over a year after the statute of limitations had run its course, is time-barred.

19

**IT IS THEREFORE RECOMMENDED THAT:**

1.  Respondent's motion to dismiss (Doc. 7) be **GRANTED**, and petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DISMISSED** with prejudice on the ground that the petition is time-barred under 28 U.S.C. § 2244(d).

2.  A certificate of appealability should issue with respect to the statute of limitations issue addressed herein because under the applicable two-part standard enunciated in Slack v. *McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" could find it debatable whether the Court is correct in its procedural ruling and whether the petitioner has stated a viable constitutional claim for relief in his petition.

3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would be taken in "good faith," and therefore **GRANT** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

s/Stephanie K. Bowman_____

Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

REGINALD GRIFFIN,                                    Case No. 1:13-cv-861
      Petitioner,

                                         Barrett, J.

      vs                                               Bowman, M.J.

WARDEN, ALLEN
CORRECTIONAL INSTITUTION,
      Respondent.


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections WITHIN 14 DAYS after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc